Rosemary M. Rivas (State Bar No. 209147)
Email: rrivas@zlk.com
**LEVI & KORSINSKY, LLP**
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

*Attorneys for Plaintiff James J. McCauley*

[Additional Counsel listed on signature block.]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES J. MCCAULEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BLACKHAWK NETWORK HOLDINGS, INC., ANIL D. AGGARWAL, RICHARD H. BARD, THOMAS BARNDS, STEVEN A. BURD, ROBERT L. EDWARDS, MOHAN GYANI, PAUL HAZEN, ROBERT B. HENSKE, TALBOTT ROCHE, ARUN SARIN, WILLIAM Y. TAUSCHER, and JANE J. THOMPSON,<br><br>Defendants. | Case No. 3:18-cv-1667<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff James J. McCauley ("Plaintiff"), by and through his undersigned attorneys, brings this stockholder class action on behalf of himself and all other similarly situated public stockholders of Blackhawk Network Holdings, Inc. ("Blackhawk" or the "Company") against Blackhawk, Anil D. Aggarwal, Richard H. Bard, Thomas Barnds, Steven A. Burd, Robert L. Edwards, Mohan Gyani, Paul Hazen, Robert B. Henske, Talbott Roche, Arun Sarin, William Y. Tauscher, and Jane J. Thompson, the members of the Blackhawk's board of directors (collectively referred to as the "Board" or the "Individual Defendants," and, together with Blackhawk, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger between Blackhawk and BHN Holdings, Inc. ("BHN") through the transaction as alleged in detail herein (the "Proposed Transaction"). Plaintiff alleges the following based upon personal knowledge as to himself, and upon information and belief, including the investigation of Counsel, as to all other matters.

## NATURE OF THE ACTION

1.      On January 16, 2018, Blackhawk announced that it had entered into an Agreement and Plan of Merger ("Merger Agreement") with BHN and BHN Merger Sub, Inc. ("Merger Sub"), under which Merger Sub will be will be merge with and into the Company, with the Company continuing as the surviving corporation and as a wholly owned subsidiary of BHN. Under the terms of the Merger Agreement, Blackhawk's public stockholders will receive $45.25 in cash in exchange for each share of Blackhawk common stock they hold prior to the effective time of the merger (the "Merger Consideration").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") to be filed with the SEC on March 2, 2018. The Blackhawk Board recommends in the Proxy that Blackhawk stockholders vote in favor of the Proposed Transaction at the upcoming stockholder special meeting, and agree to exchange their shares pursuant to the terms of the Merger Agreement based among other things on internal and external factors examined by the Board to make its recommendation and an opinion rendered by the Company's financial advisor, Sandler O'Neill & Partners, L.P. ("Sandler").

3.      Specifically, the Proxy contains materially incomplete and misleading information

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

concerning: (i) the Company's financial projections; (ii) the valuation analyses performed by the Company's financial advisor, Sandler; and (iii) the background process leading up to the Proposed Transaction.

4.      The special meeting of Blackhawk stockholders to vote on the Proposed Transaction is scheduled for March 30, 2018 (the "Stockholder Vote").  Therefore, it is imperative that the material information omitted from the Proxy is disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to Blackhawk's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

**PARTIES**

6.      Plaintiff is, and at all relevant times has been, a stockholder of Blackhawk.

7.      Defendant Blackhawk is a Delaware corporation and maintains its principal executive offices at 6220 Stoneridge Mall Road, Pleasanton, California 94588.  Blackhawk's common stock is listed and traded on the NASDAQ under the ticker symbol "HAWK."

8.      Defendant Anil D. Aggarwal is, and has been at all relevant times, a director of Blackhawk.

9.      Defendant Richard H. Bard is, and has been at all relevant times, a director of Blackhawk.

10.     Defendant Thomas Barnds is, and has been at all relevant times, a director of Blackhawk.

11.     Defendant Steven A. Burd is, and has been at all relevant times, a director of Blackhawk.

12.     Defendant Robert L. Edwards is, and has been at all relevant times, a director of Blackhawk.

13.     Defendant Mohan Gyani is, and has been at all relevant times, a director of Blackhawk.

14.     Defendant Paul Hazen is, and has been at all relevant times, a director of Blackhawk.

15.     Defendant Robert B. Henske is, and has been at all relevant times, a director of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT
OF 1934

Blackhawk.

16.    Defendant Talbott Roche is, and has been at all relevant times, a director of Blackhawk.

17.    Defendant Arun Sarin is, and has been at all relevant times, a director of Blackhawk.

18.    Defendant William Y. Tauscher is, and has been at all relevant times, a director of Blackhawk and currently serves as Chairman of the Board.

19.    Defendant Jane J. Thompson is, and has been at all relevant times, a director of Blackhawk.

20.    The parties in paragraphs 8 through 20 are referred to herein as the "Individual Defendants" and/or the "Board," collectively with Blackhawk the "Defendants."

**JURISDICTION AND VENUE**

21.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

22.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Blackhawk maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Blackhawk common stock who are being and will be harmed by Defendants' actions described below (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

25.     This action is properly maintainable as a class action for the following reasons:

a)  the Class is so numerous that joinder of all members is impracticable.  As of February 28, 2018, Blackhawk had approximately 56,805,674 shares of common stock outstanding;

b)  the holders of these shares are believed to be geographically dispersed through the United States;

c)  there are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members.   The common questions include, *inter alia*, the following:

   i.   whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

   ii.  whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

   iii. whether Plaintiff and the other members of the Class would suffer irreparable injury were they required to vote on the Proposed Transaction as presently anticipated.

d)  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

e)  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

f)  the prosecution of separate actions by individual members of the Class would create

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

g) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### I.    Company Background and the Proposed Transaction

26.    Blackhawk, incorporated on January 27, 2006, is a prepaid payment network.  The Company operates through three segments: (1) U.S. Retail; (2) International; and (3) Incentives & Rewards.  The U.S. Retail segment is engaged in the sale of prepaid products to consumers at its retail distribution partners and online and the sale of telecom handsets to retail distribution partners for resale to consumers.  Blackhawk's Incentives & Rewards segment is engaged in the sale of prepaid products, software, and services to its business clients.  The Company utilizes technology to offer to consumers and businesses a selection of prepaid cards in physical and electronic forms, as well as prepaid products, payment services, and incentives solutions.  Blackhawk is also a third-party distributor of gift cards.  As of December 31, 2016, the Company offered its products and/or solutions directly or through commercial relationships in the United States and 25 other countries and delivered solutions in over 100 countries.

27.    On January 16, 2018, Blackhawk announced the Proposed Transaction, which states in relevant part:

**Blackhawk Network Holdings, Inc. to be Acquired by Silver Lake and P2 Capital Partners for $3.5 Billion**

*Blackhawk's stockholders to receive $45.25 per share in cash, representing a 29.3% premium over the average closing share price during the 90 calendar days ended January 12, 2018*

Pleasanton, Calif. – Jan. 16, 2018 – Blackhawk Network Holdings, Inc. (NASDAQ: HAWK) ("Blackhawk"), a global financial technology company and a leader in prepaid gift, reward and incentive technologies and solutions, today announced that Silver Lake, the global leader in technology investing, and P2 Capital Partners have agreed to acquire Blackhawk in an all-cash transaction for a total consideration of approximately $3.5 billion, which includes Blackhawk's debt. Under the terms of the agreement, Blackhawk stockholders will receive $45.25 per share in cash upon closing of the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

transaction, representing a premium of 24.0% over Blackhawk's closing share price of $36.50 on January 12, 2018 and a premium of 29.3% over the average closing share price during the 90 calendar days ended January 12, 2018.

Blackhawk operates a leading physical and digital gift card and prepaid payments network with global scale, connecting more than 1,000 brands to over 244,000 retail distribution locations and online channels. Upon completion of the transaction Blackhawk will operate as a private company under the leadership of the current management team. Blackhawk's Board of Directors has unanimously approved the definitive merger agreement and recommends that stockholders vote in favor of the transaction. The definitive agreement has fully committed debt and equity financing, including an approximately $1.7 billion equity commitment from Silver Lake. P2 Capital Partners, which beneficially owns approximately 5.4% of Blackhawk's outstanding common stock, has committed to vote in favor of the proposed transaction.

"After a thorough assessment, the Board has determined that this transaction represents a compelling outcome for our stockholders, customers and employees. It recognizes the value of Blackhawk's prospects while providing stockholders with an immediate cash value at a substantial premium," said Bill Tauscher, Executive Chairman of Blackhawk.

"This transaction delivers immediate benefits and significant value to our stockholders," said Talbott Roche, CEO and President of Blackhawk. "Silver Lake and P2 Capital Partners bring the long-term focus, financial resources and technology expertise that can enable us to accelerate growth initiatives globally and reach the company's full potential."

"Blackhawk's outstanding network of partners and proprietary technology creates a unique franchise in the payments industry with a proven ability to innovate in both the physical and digital segments," said Mike Bingle, Managing Partner at Silver Lake. "We are excited to work with Blackhawk's world-class management team and our new partners at P2 Capital Partners to strengthen the company's position in large and growing parts of the financial technology ecosystem."

"This transaction represents the best way to maximize value for all stockholders," said Alex Silver, Partner at P2 Capital Partners. "We have been an investor and supporter of Blackhawk's strategy and management for several years, and we look forward to working with Silver Lake and Blackhawk management to drive the company's next stage of growth."

The transaction, which is expected to close mid-2018, is subject to customary closing conditions, including receipt of stockholder and regulatory approvals. The definitive merger agreement permits Blackhawk's Board of Directors and its advisors to solicit, receive, evaluate and enter into negotiations with respect to alternative proposals through February 9, 2018. There can be no assurance that this process will result in a superior proposal, and Blackhawk's Board of Directors does not intend to disclose developments with respect to the solicitation process unless and until the Board makes a determination requiring further disclosure.

Sandler O'Neill & Partners, L.P., is acting as financial advisor to Blackhawk, and Wachtell, Lipton, Rosen & Katz is serving as Blackhawk's legal advisor in the transaction.

Barclays, BofA Merrill Lynch, affiliates of Goldman, Sachs & Co. and J.P. Morgan (in alphabetical order) are acting as financial advisors to Silver Lake and are providing debt financing to Blackhawk in connection with the transaction. Citi is providing debt financing to Blackhawk in connection with the transaction. Simpson Thacher & Bartlett

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

LLP is serving as Silver Lake's legal advisor, and Debevoise & Plimpton LLP is serving as legal advisor to P2 Capital Partners.

**About Blackhawk Network Holdings, Inc.**

Blackhawk Network Holdings, Inc. (NASDAQ: HAWK) is a global financial technology company and a leader in connecting brands and people through branded value solutions. Blackhawk platforms and solutions enable the management of stored value products, promotions and rewards programs in retail, ecommerce, financial services and mobile wallets. Blackhawk's Hawk Commerce division offers technology solutions to businesses and direct to consumers. The Hawk Incentives division offers enterprise, SMB and reseller partners an array of platforms and branded value products to incent and reward consumers, employees and sales channels. Headquartered in Pleasanton, Calif., Blackhawk operates in 26 countries. For more information, please visit blackhawknetwork.com, hawkcommerce.com, hawkincentives.com or our product websites giftcards.com, giftcardmall.com, cardpool.com, giftcardlab.com and omnicard.com.

**About Silver Lake**

Silver Lake is the global leader in technology investing, with about $39 billion in combined assets under management and committed capital and a team of approximately 100 investment and value creation professionals located in Silicon Valley, New York, London, Hong Kong and Tokyo. Silver Lake's portfolio of investments collectively generates more than $140 billion of revenue annually and employs more than 300,000 people globally. The firm's current portfolio includes leading technology and technology-enabled businesses such as Alibaba Group, Ancestry, Broadcom Limited, Cast & Crew, Ctrip, Dell Technologies, Endeavor, Fanatics, Global Blue, GoDaddy, Motorola Solutions, Red Ventures, Sabre, SoFi, SolarWinds and Symantec. For more information about Silver Lake and its entire portfolio, please visit www.silverlake.com.

**About P2 Capital Partners**

P2 Capital Partners is a New York-based investment firm that applies a private equity approach to investing in the public market. P2 Capital Partners manages a concentrated portfolio of significant ownership stakes in high quality public companies in which it is an active shareholder focused on creating long-term value in partnership with management. The firm will also lead private equity transactions within its public portfolio. P2 Capital Partners' limited partners include leading public pension funds, corporate pension funds, endowments, foundations, insurance companies, and high net worth investors.[1]

28.    The Merger Consideration in the Proposed Transaction is unfair and inadequate, because, among other things, the intrinsic value of Company and its common stock is materially in excess of the amount offered given the Company's prospects for future growth and earnings. As a result, the Proposed Transaction will deny Class members their right to fully share equitably in the true value of the Company.

---

[1]    Blackhawk Network Holdings, Inc., Current Report (Form 8-K), at Exhibit 99.1 (Press Release of Blackhawk Network Holdings, Inc., dated January 16, 2018.) (January 16, 2018).

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

29.    For example, on July 9, 2017, the Company announced its Second Quarter 2017 results. Notably, the Company's revenue increased **18%** from $391.2 million for the quarter ended June 18, 2016.    Likewise, adjusted operating revenues totaled $235.5 million, a **28%** increase from $183.7 million, and adjusted EBITDA totaled $29.8 million, an increase of **13%** from $26.4 million for the quarter ended June 18, 2016.    Talbott Roche, Blackhawk's Chief Executive Officer ("CEO") and President commented on the Company's results and stated "[t]he Company's second quarter 2017 financial results exceeded expectations.    We were pleased with the strong performance in both the international and incentives segments."[2]    Roche further emphasized the Company's success and stated, "[w]e're making excellent progress on our margin expansion initiatives with full year 2017 adjusted EBITDA margins projected to *expand approximately 60 basis points*."    *Id.* (emphasis added).

30.    On October 10, 2017, Seeking Alpha identified Blackhawk as "[a]n [o]verlooked [g]em [w]ith 35% [u]pside,"[3] highlighting that the Company growing its core products and offering with acquisitions and new product deployments for the last 3 years and that Blackhawk's "constant expansion and investment into high-margin businesses push the company far ahead of peers *into a market dominating position for the years to come*."    *Id.* (emphasis added).

31.    In addition, the $45.25 Merger Consideration represents a **discount** compared to the Company's 52-week high price of $46.10, achieved on July 20, 2017.

32.    In sum, Blackhawk's common stock has demonstrated considerable industry value and growth in 2017.    The Company's public common stockholders should be provided with sufficient financial information in the Proxy to make an informed decision regarding the Proposed Transaction.

33.    It is therefore imperative that Blackhawk's public common stockholders receive the material information (discussed in detail below) that has been omitted from the Proxy, which is necessary for the Company's public stockholders to properly exercise their corporate suffrage rights

---

[2]    *Blackhawk Announces Second Quarter 2017 Financial Results; Reaffirms Annual 2017 Guidance*, SEEKING ALPHA (July 19, 2017), *available at* http://ir.blackhawknetwork.com/news-releases/news-release-details/blackhawk-announces-second-quarter-2017-financial-results-1?field_nir_news_date_value[min]=2018.

[3]    *Blackhawk Network: An Overlooked Gem With 35% Upside – An Investment Thesis*, SEEKING ALPHA (Oct. 10, 2017), *available at* https://seekingalpha.com/article/4112667-blackhawk-network-overlooked-gem-35-percent-upside-investment-thesis.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

and make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

## II.    The Proxy Is Materially Incomplete and Misleading

34.    On March 2, 2018, in order to convince Blackhawk stockholders to tender their shares, the Board authorized the filing of a materially incomplete and misleading Proxy.  The Proxy solicits the Company's stockholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *Blackhawk's Financial Projections*

35.    The Proxy provides several non-GAAP financial metrics, including Adjusted EBITDA, Adjusted Operating Revenues, Adjusted Net Income, and Adjusted Earnings Per Share, for Blackhawk, but fails to provide the line item projections detailed below for the metrics used to calculate these non-GAAP measures.

36.    First, the Proxy defines Adjusted EBITDA as "EBITDA plus adjustments for the impact of business units held for sale, stock based compensation, acquisitions-related employee compensation expenses, revenue adjustments from purchase accounting, goodwill and other asset impairment charges, the change in the fair value of contingent consideration, the net gain on the transaction to transition Blackhawk's program-managed general-purpose reloadable (referred to as "GPR") business to another program manager, the gain on the sale of Blackhawk's member interest in Visa Europe and legal and accounting related costs incurred in conjunction with the sale of Grass Roots Meetings & Events Limited."  However, the Proxy fails to provide values for: (i) adjustments for the impact of business units held for sale; (ii) stock based compensation; (iii) acquisitions-related employee compensation expenses; (iv) revenue adjustments from purchase accounting, goodwill, and other asset impairment charges; (v) the change in the fair value of contingent consideration; (vi) the net gain on the transaction to transition Blackhawk's program-managed GPR business to another program manager; (vii) the gain on the sale of Blackhawk's member interest in Visa Europe; and (viii) legal and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

accounting related costs incurred in conjunction with the sale of Grass Roots Meetings & Events Limited. *See* Proxy at 38.

37.    Second, the Proxy defines Adjusted Operated Revenues as "prepared and presented to offset the distribution commissions paid and other compensation paid to distribution partners and business clients as well as to adjust for marketing and other pass-through revenues that have offsetting expense, to adjust for the impact on revenues recognized from the step down in basis of deferred revenue from its carrying value to fair value in a business combination at the acquisition date and to adjust for the impact of business units held for sale."  However, the Proxy fails to provide values for: (i) distribution commissions paid and other compensation paid to distribution partners and business clients as well as to adjust for marketing and other pass-through revenues that have offsetting expense; (ii) the impact on revenues recognized from the step down in basis of deferred revenue from its carrying value to fair value in a business combination at the acquisition date; and (iii) the impact of business units held for sale. *Id.*

38.    Third, the Proxy defines Adjusted Net Income as "GAAP Net Income adjusted for the adjustments in respect of Adjusted EBITDA described in footnote (1) above as well as the addition of acquired intangibles on a tax-effected basis."  However, the Proxy fails to provide values for the acquired intangibles on a tax-effected basis. *Id.*

39.    Failure to provide complete and full disclosure of the line item projections for the metrics used (*e.g.*, stock-based compensation) to calculate the above-mentioned non-GAAP metrics leaves Blackhawk's stockholders without the necessary, material information to reach a full-informed decision concerning the Company, the fairness of the Merger Consideration, and, ultimately, whether to vote in favor of the Proposed Transaction.  In fact, not only has Blackhawk previously provided its shareholders with the above-mentioned information, but the Company's disclosure of such information has illustrated that there is a substantial difference between the GAAP and non-GAAP financial metrics.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

For example, the tables below are from Blackhawk's third quarter 2017 press release[4]:

TABLE 2: RECONCILIATION OF NON-GAAP MEASURES

| | 12 weeks ended | | 36 weeks ended | |
|---|---|---|---|---|
| | September 9, 2017 | September 10, 2016 | September 9, 2017 | September 10, 2016 |
| **Prepaid and processing revenues:** | | | | |
| Commissions and fees | $ 269,737 | $ 248,138 | $ 807,576 | $ 750,693 |
| Program and other fees | 95,592 | 64,857 | 304,416 | 207,718 |
| Total prepaid and processing revenues | $ 365,329 | $ 312,995 | $ 1,111,992 | $ 958,411 |
| **Adjusted operating revenues:** | | | | |
| Total operating revenues | $ 419,259 | $ 361,560 | $ 1,289,641 | $ 1,119,228 |
| Revenue adjustment from purchase accounting | 965 | 3,666 | 4,454 | 11,875 |
| Marketing and other pass-through revenues | (15,336) | (17,943) | (59,969) | (52,098) |
| Partner distribution expense | (196,633) | (178,363) | (577,634) | (541,749) |
| Adjusted operating revenues | $ 208,255 | $ 168,920 | $ 656,492 | $ 537,256 |
| **Adjusted EBITDA:** | | | | |
| Net income (loss) before allocation to non-controlling interests | $ (7,586) | $ (5,060) | $ (27,143) | $ (19,840) |
| Interest and other (income) expense, net | (631) | (2,360) | (2,134) | (3,258) |
| Interest expense | 7,374 | 5,684 | 21,368 | 13,868 |
| Income tax expense (benefit) | (11,858) | (8,357) | (26,224) | (18,884) |
| Depreciation and amortization | 27,754 | 22,941 | 81,934 | 72,084 |
| EBITDA | 15,053 | 12,848 | 47,801 | 43,970 |
| Adjustments to EBITDA: | | | | |
| Employee stock-based compensation | 8,109 | 8,293 | 24,560 | 24,865 |
| Acquisition-related employee compensation expense | (14) | 420 | 548 | 620 |
| Revenue adjustment from purchase accounting, net | 905 | 3,665 | 4,209 | 11,114 |
| Other (gains)/losses, net | — | — | — | (754) |
| Change in fair value of contingent consideration | (2,100) | 1,300 | (5,097) | 2,100 |
| Goodwill impairment | 9,000 | — | 9,000 | — |
| Adjusted EBITDA | $ 30,953 | $ 26,526 | $ 81,021 | $ 81,915 |
| **Adjusted EBITDA margin:** | | | | |
| Total operating revenues | 419,259 | 361,560 | 1,289,641 | 1,119,228 |
| Operating income (loss) | (12,701) | (10,093) | (34,133) | (28,114) |
| Operating margin | (3.0)% | (2.8)% | (2.6)% | (2.5)% |
| Adjusted operating revenues | $ 208,255 | $ 168,920 | $ 656,492 | $ 537,256 |
| Adjusted EBITDA | $ 30,953 | $ 26,526 | $ 81,021 | $ 81,915 |
| Adjusted EBITDA margin | 14.9 % | 15.7 % | 12.3 % | 15.2 % |

---

[4]     *Blackhawk Announces Third Quarter 2017 Financial Results*, BLACKHAWK NETWORK HOLDINGS, INC. (Oct. 11, 2017), *available at* http://ir.blackhawknetwork.com/news-releases/news-release-details/blackhawk-announces-third-quarter-2017-financial-results?field_nir_news_date_value[min]=2018.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

TABLE 2: RECONCILIATION OF NON-GAAP MEASURES (continued)

| | 12 weeks ended | | 36 weeks ended | |
|---|---|---|---|---|
| | September 9, 2017 | September 10, 2016 | September 9, 2017 | September 10, 2016 |
| **Adjusted net income:** | | | | |
| Income (loss) before income tax expense | $ (19,444) | $ (13,417) | $ (53,367) | $ (38,724) |
| Employee stock-based compensation | 8,109 | 8,293 | 24,560 | 24,865 |
| Acquisition-related employee compensation expense | (14) | 420 | 548 | 620 |
| Revenue adjustment from purchase accounting, net | 905 | 3,665 | 4,209 | 11,114 |
| Other (gains)/losses, net | — | (1,944) | — | (2,698) |
| Change in fair value of contingent consideration | (2,100) | 1,300 | (5,097) | 2,100 |
| Amortization of intangibles | 15,256 | 11,529 | 44,416 | 38,988 |
| Goodwill impairment | 9,000 | — | 9,000 | — |
| Adjusted income before income tax expense | $ 11,712 | $ 9,846 | $ 24,269 | $ 36,265 |
| Income tax expense (benefit) | (11,858) | (8,357) | (26,224) | (18,884) |
| Tax expense on adjustments | 13,162 | 10,336 | 31,698 | 30,105 |
| Adjusted income tax expense | 1,304 | 1,979 | 5,474 | 11,221 |
| Adjusted net income before allocation to non-controlling interests | 10,408 | 7,867 | 18,795 | 25,044 |
| Net loss (income) attributable to non-controlling interests, net of tax | (180) | (42) | (460) | (152) |
| Adjusted net income attributable to Blackhawk Network Holdings, Inc. | $ 10,228 | $ 7,825 | $ 18,335 | $ 24,892 |
| **Adjusted diluted earnings per share:** | | | | |
| Net income (loss) attributable to Blackhawk Network Holdings, Inc. | $ (7,766) | $ (5,102) | $ (27,603) | $ (19,992) |
| Distributed and undistributed earnings allocated to participating securities | — | — | — | (15) |
| Net income (loss) available for common shareholders | (7,766) | (5,102) | (27,603) | (20,007) |
| Diluted weighted average shares outstanding | 56,709 | 55,668 | 56,355 | 55,851 |
| Diluted earnings (loss) per share | $ (0.14) | $ (0.09) | $ (0.49) | $ (0.36) |
| Adjusted net income attributable to Blackhawk Network Holdings, Inc. | $ 10,228 | $ 7,825 | $ 18,335 | $ 24,892 |
| Adjusted distributed and undistributed earnings allocated to participating securities | — | (7) | — | (44) |
| Adjusted net income available for common shareholders | $ 10,228 | $ 7,818 | $ 18,335 | $ 24,848 |
| Diluted weighted-average shares outstanding | 56,709 | 55,668 | 56,355 | 55,851 |
| Increase in common share equivalents | 1,590 | 1,304 | 1,665 | 1,496 |
| Adjusted diluted weighted-average shares outstanding | 58,299 | 56,972 | 58,020 | 57,347 |
| Adjusted diluted earnings per share | $ 0.18 | $ 0.14 | $ 0.32 | $ 0.43 |
| **Reduction in income taxes payable:** | | | | |
| Reduction in income taxes payable resulting from amortization of spin-off tax basis step-up | $ 6,597 | $ 6,580 | $ 19,791 | $ 19,767 |
| Reduction in cash taxes payable from amortization of acquisition intangibles and utilization of acquired NOLs | 1,667 | 4,428 | 6,405 | 12,606 |
| Reduction in cash taxes payable from deductible stock-based compensation and convertible debt | 3,294 | 2,491 | 16,936 | 11,403 |
| Reduction in income taxes payable | $ 11,558 | $ 13,499 | $ 43,132 | $ 43,776 |
| Adjusted diluted weighted average shares outstanding | 58,299 | 56,972 | 58,020 | 57,347 |
| Reduction in income taxes payable per share | $ 0.20 | $ 0.24 | $ 0.74 | $ 0.76 |

40.    In addition, the Proxy states that Blackhawk's management prepared several iterations of the Company's financial forecasts for the fiscal years 2017 through 2020:  the Initial Projections, the November Estimate Range ("November Projections"), the Preliminary 2017 Plan ("December Projections"), and Revised Projections ("January Projections").  However, in contrast to the Initial Projections, which included Adjusted EBITDA, Adjusted Operating Revenues, Adjusted Net Income, and Adjusted Earnings Per Share, the Proxy does not disclose similar metrics (*i.e.*, Adjusted Operating Revenues, Adjusted Net Income, and Adjusted Earnings Per Share) for the November Projections,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

December Projections, and January Projections. *See* Proxy at 38-39. In further contrast to the Initial Projections, the November Projections, December Projections, and January Projections also do not disclose the Company's expected performance for the fiscal years 2018 through 2020, but instead only provide Adjusted EBITDA for the fiscal year 2018 for the November and January projections and Adjusted EBITDA for the fiscal years 2017 and 2018 for the January projections. *Id.*

41.    This is particularly troubling in light of the fact that Blackhawk's management informed Sandler that it should use the January Projections for the purposes of its fairness opinion because it was "management's view that the [January] Projections were significantly more likely to reflect the future business performance of the Company on a standalone basis . . . ." Proxy at 38.

42.    However, because the January Projections were significantly more limited than the Initial Projections, it is unclear, and the Proxy does not disclose, why Blackhawk's management believed that the January Projections were superior, particularly for Sandler to use as a basis for its fairness opinion. The Proxy also fails to disclose why Blackhawk's management did not create revised projections for the other financial metrics and fiscal years included in the Initial Projections.[5]

43.    Omission of the above-referenced projections renders the financial projections included on pages 38 through 39 of the Proxy materially incomplete and misleading. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.

44.    Furthermore, complete disclosure of the above-mentioned information omitted from the financial projections is particularly important for Blackhawk stockholders in light of the fact that stockholders are being asked to vote on a transaction, which has been unanimously endorsed by the Board, that, if consummated, will cause Blackhawk stockholders to be cashed out of the Company and deny them their right to fully share equitably in the true value of the Company.

---

[5]    In sum, although Blackhawk stockholders would know that Sandler was told to use the January Projections, and would also know that the January Projections were more limited than the Initial Projections, Blackhawk stockholders would not know why Sandler was so instructed, or why management did not update the other financial metrics or years of the Initial Projections.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

*Sandler's Valuation Analyses and Fairness Opinion*

45.    With respect to Sandler's *Discounted Cash Flow Analysis*, the Proxy fails to disclose the following key components used in the analysis: (i) the inputs and assumptions underlying the calculation of the 11.27% discount rate, in particular the risk free rate, the equity risk premium, the size premium, and the industry premium; (ii) the value of the excluded results from the Grass Roots Meetings & Events Limited and Cardpool, Inc.; (iii) the inputs and assumptions underlying the calculation Blackhawk's compound annual growth rate of EBITDA from 2017 to 2021 ranging from 5.00% to 15.00%. *See* Proxy at 46.

46.    These key inputs are material to Blackhawk stockholders, and their omission renders the summary of Sandler's discounted cash flow analysis materially incomplete and misleading. Indeed, as a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*. As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*…. This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

47.    With respect to Sandler's *Comparable Company Analysis*, the Proxy fails to disclose the individual multiples Sandler calculated for each company utilized. *See* Proxy at 44. The omission of these multiples renders the summary of the analysis and the implied values materially misleading. A fair summary of *Comparable Company Analysis* requires the disclosure of the individual multiples

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

for each company; merely providing the range that a banker applied is insufficient, as Blackhawk stockholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to drive down the Company's valuation.

48.    Likewise, with respect to Sandler's *Analysis of Precedent Merger Transactions*, the Proxy fails to disclose the individual multiples Sandler calculated for each transaction utilized. *See* Proxy at 44.  For the same reasons mentioned above, the omission of these multiples renders the summary of the analysis and the implied values materially misleading.

49.    Similarly, with respect to Sandler's *Public Company Premium Analysis*, the Proxy fails to disclose the individual transactions Sandler considered and the individual premiums calculated for each transaction.  *See* Proxy at 45.  Accordingly, the omission of these multiples renders the summary of the analysis and the implied values materially misleading.  Moreover, the individual multiples are particularly important when the analysis considers ***92*** transactions across ***all industries*** and, as a result, may not provide an accurate comparison to the Company and the Proposed Transaction.

### Material Omissions Concerning the Sales Process

50.    The Proxy also fails to disclose or misstate material information relating to the sale process leading up to the Proposed Transaction.

51.    The Proxy fails to disclose whether the confidentiality agreement the Company executed with Party A on January 17, 2018, includes a standstill provision that is still in effect and/or contains a "don't-ask-don't-waive" ("DADW") standstill provision that is presently precluding Party A from making a topping bid for the Company.  *See* Proxy at 33.  Such information is material to Blackhawk stockholders as a reasonable Blackhawk stockholder would find it material and important to their voting decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

52.    Defendants failure to provide Blackhawk stockholders with the foregoing material information renders the statements in the *Background of the Merger* section of the Proxy false and/or materially misleading.

53.    In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT
OF 1934

of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder)**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

56.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that registration statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

57.     The omission of information from a registration statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

58.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the Company's financial projections; (ii) the valuation analyses performed by the Company's financial advisor, Sandler; and (iii) the background process leading up to the Proposed Transaction.

59.     In so doing, Defendants made untrue statements of fact and/or omitted material facts

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT
OF 1934

necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to Blackhawk's common stockholders although they could have done so without extraordinary effort.

60.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Sandler reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Sandler, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Sandler's analyses in connection with their receipt of the fairness opinion, question Sandler as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy, and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

61.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the

signing of the Merger Agreement and the preparation of the Company's financial projections.

62.     Blackhawk is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

63.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of Blackhawk within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Blackhawk, and participation in and/or awareness of the Blackhawk's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Blackhawk, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Blackhawk, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy at issue contains the unanimous recommendation of

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy.

68.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

69.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

71.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that the Individual Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.    Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.    Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

D.    Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 16, 2018                    **LEVI & KORSINSKY, LLP**

                         By: */s/ Rosemary M. Rivas*
                             Rosemary M. Rivas
                             44 Montgomery Street, Suite 650
                             San Francisco, CA 94104
                             Telephone: (415) 291-2420
                             Facsimile: (415) 484-1294

                             **LEVI & KORSINSKY, LLP**
                             Donald J. Enright (to be admitted *pro hac vice*)
                             Email: denright@zlk.com
                             Elizabeth Tripodi (to be admitted *pro hac vice*)
                             Email: etripodi@zlk.com
                             1101 30th St., NW, Ste. 115
                             Washington, DC 20007
                             Telephone: (202) 524-4292
                             Facsimile: (202) 333-2121

                             **MONTEVERDE & ASSOCIATES PC**
                             Juan E. Monteverde (to be admitted *pro hac vice*)
                             Email: jmonteverde@monteverdelaw.com
                             Miles D. Schreiner (to be admitted *pro hac vice*)
                             Email: mschreiner@monteverdelaw.com
                             The Empire State Building
                             350 Fifth Avenue, Suite 4405
                             New York, NY 10118
                             Telephone: (212) 971-1341
                             Facsimile: (212) 202-7880

                             *Attorneys for Plaintiff James J. McCauley*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT
OF 1934

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, James J. McCauley , declare as to the claims asserted under the federal securities laws, as follows:

1. I have reviewed the Complaint and authorized its filing.

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation.

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4. I currently hold shares of Blackhawk Network Holdings Inc. My purchase history is as follows:

| Purchase Date | Stock Symbol | Shares Transacted | Price Per Share |
| --- | --- | --- | --- |
| 1/12/2015 | HAWK | 100 | 36.25 |

5. During the three years prior to the date of this Certification, I have not participated nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I declare, under penalty of perjury, that the foregoing is true and correct. Executed this March 16, 2018, at Phoenix, AZ.

Name: James J. McCauley

Signed: